**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ZHEJIANG QILI HEALTH TECHNOLOGY CO., LTD.<br><br>                    Plaintiff,<br><br>        v.<br><br>CORE HOME FITNESS, L.L.C.<br><br>                    Defendant. | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

**AND MONETARY AWARD**

Plaintiff, Zhejiang Qili Health Technology Co., Ltd., seeks a declaratory judgment that res judicata bars defendant Core Home Fitness, L.L.C. ("Defendant") from asserting U.S. Patent No. 7,614,983 B1 (the "'983 Patent") against Plaintiff's products, Plaintiff's products do not infringe the '983 Patent, and the '983 Patent is invalid, and monetary awards for Plaintiff's financial loss and reputational harm.

<u>**NATURE OF THE ACTION**</u>

1.      This court has original jurisdiction over the subject matter of this action pursuant to the Patent Act, 35 U.S.C.§§ 101, 102, 103 et seq., pursuant to 28 U.S.C.§§ 1331, 1332(a) and (c), 1338(a), and pursuant to the Declaratory Judgment Act, 28 U.S.C.§§ 2201 and 2202.

2.      This is an action under the Declaratory Judgment Act, 28 U.S.C.§§ 2201 and 2202, seeking a declaratory judgment that Plaintiff's products have not infringed the '983 Patent asserted by Defendant in its complaints filed with Amazon.com, eBay.com, and/or Walmart.com.

3.      This is an action under the Declaratory Judgment Act, 28 U.S.C.§§ 2201 and 2202, seeking a declaratory judgment that Defendant's '983 Patent is invalid under at least 35 U.S.C. §§ 102 and/or 103.

4.      This action arises from Defendant's filings of fraudulent patent infringement reports to Amazon.com, eBay.com, and/or Walmart.com to delist products designed and manufactured by Plaintiff  that had enjoyed bigger successes than Defendant's own competing products. As a result of the delisting, Plaintiff suffered significant financial loss and reputational harm.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 2201, 2202, 1331, 1338(a), because this action arises under the laws of the United States, in particular the Patent Act of the United States, 35 U.S.C. § 100 et seq.

6.      An actual case or controversy exists between the parties to this action. Defendant filed reports of alleged patent infringement to Amazon.com, eBay.com, and/or Walmart.com which resulted in delisting of dumbbells designed and manufactured by Plaintiff's. Product delisting from Amazon.com, eBay.com, and/or Walmart.com stopped Plaintiff's dumbbell sales on Amazon.com, eBay.com, and/or Walmart.com and caused significant financial damages and reputational harm. Defendant's actions thereby give rise to an actual controversy under 28 U.S.C. §§ 2201 et. seq.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant since the Defendant directly and continuously targets consumers in the State of Illinois by setting up and operating fully interactive e-commerce stores (https://www.amazon.com/s?k=CORE+FITNESS and https://corehomefitness.com/) that target Illinois consumers, offers shipping to Illinois, and, on information and belief, has sold a significant amount of products to residents in the State of Illinois, particularly those in the geographic region covered by this Court. Defendant is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois, particularly in the geographic region covered by this Court.

## PARTIES

8.      Plaintiff is based in China. It designs, manufactures, and distribute adjustable dumbbells which are sold by independent e-commerce stores on Amazon.com, eBay.com, and/or Walmart.com, each with a distinct Amazon Standard Identification Number (ASIN), Walmart Identification Number (WIN), or eBay Item Number.

9.      The following table lists the information of some of Plaintiff's products that were sold on Amazon.com, eBay.com, and/or Walmart.com, but delisted or removed from Amazon.com, eBay.com, and/or Walmart.com as a result of Defendant's fraudulent reports alleging infringement of the '983 Patent. These products are referred to as "Plaintiff's Products" hereinafter.

| Online Store Name | Identification/Item No. |
|---|---|
| Xddias Fitness Expert (on Amazon.com) | B0DH5TK7KD |
| | B0D46VCP1F |
| | B0D46WV7FQ |

| | |
|---|---|
| | B0D46WNWPJ |
| | B0D46YS7DW |
| Rendpas Direct (on Amazon.com) | B0C4XX93WK |
| | B0C4XZ32FH |
| ZYZHI (on Amazon.com) | B0CS9GYSGN |
| | B0CS9GH5VQ |
| | B0CS9GYSGN |
| | B0CY59PJ3P |
| | B0DGXWFV6K |
| LEEKEY DIRECT (on Amazon.com) | B0CML914XS |
| | B0CMLRHJSV |
| | B0CML8S5HD |
| lnowfitness (on eBay.com) | 387350088609 |
| | 387349996354 |
| Pooboostore (on Walmart.com) | 6638855653 |
| | 6638955011 |
| | 6633965695 |
| | 6650800670 |

10.     On information and belief, Defendant is an LLC incorporated in the State of Nevada. It owns and operates at least a fully interactive Amazon.com store named "CORE FITNESS" which sells fitness equipment including adjustable dumbbells. Below is a screenshot of one of its products listed on Amazon.com.

4



11. On information and belief, Defendant is registered and headquartered in the State of Ohio as a foreign LLC, and owns and operates the fully interactive website https://corehomefitness.com/ which sells dumbbells (among many other fitness products). It shows an Ohio address for contact. Below are screenshots of the relevant pages.



# ADJUSTABLE DUMBELLS



**SAVE $30.00**

**SAVE $60.00**

**SAVE $20.00**

ADJUSTABLE DUMBBELL SET
~~$399.99~~ $369.99

ADJUSTABLE DUMBBELL STAND
(RED VERSION)
~~$179.99~~ $119.99

ADJUSTABLE DUMBBELLS & STAND
~~$469.98~~ $449.98

**SAVE $160.00**

**SAVE $240.00**



## CONTACT

Our Office

8401 Southern Boulevard
Youngstown, Ohio 44512, USA

Operating Hours

Monday - Friday 10am - 4pm EST

## FACTTUAL BACKGROUND

12.     Plaintiff supplied its products to online sellers which own and operate stores on Amazon.com, eBay.com, and/or Walmart.com listed in the table in Paragraph 9.

13.     The dumbbells listed in Paragraph 9 were independently designed by Plaintiff and covered by at least one claim in at least one issued U.S. patent or pending U.S. patent application. They are  patently different from what is claimed in the '983 Patent asserted by Defendant in its infringement reports filed with Amazon.com, eBay.com, and/or Walmart.com.

14.     Before delisting, Plaintiff's dumbbells were popular due to their distinguished design and reasonable prices. Plaintiff's dumbbells, which are also covered by issued U.S. patents (e.g., U.S. Patent No. 11,167,167 and U.S. Patent No. 11,642,563) are substantially different from what is claimed in the '983 Patent asserted by Defendant in its reports filed with Amazon.com, eBay.com, and/or Walmart.com, alleging patent infringement by Plaintiff's dubmbells. The following are some representative images and structural illustrations of Plaintiff's dumbbells (the "Products"), including exemplary Product 1 and Product 2:

### *Product 1 (covered by U.S. Pat. No. 11,167,167 B1)*

 









Fig. 3 of U.S. Pat. No. 11,167,167 (denoted)

*Product 2 (covered by U.S. Pat. No. 11,642,563 B2)*





15.     Plaintiff's online retailers (e-commerce stores) received emails from

Amazon.com, eBay.com, and/or Walmart.com. These email informed Plaintiff's retailers that

Amazon.com, eBay.com, and/or Walmart.com had received report[s] from a rights owner

alleging they ***may*** infringe upon their [U.S.] patent [No. 7,614,983]. The emails also stated the

following and provided Defendant's email address for contact, such as the following email from

Amazon.com:

"To reactivate your listings, please send any of the documents listed below for us to review:
-- A court order stating you are allowed to sell the products and hence are not violating Amazon policy for each of the listings mentioned in the deactivation notification.
-- A letter of non-infringement from legal counsel.
-- Work directly with the rights owner who reported the violation to submit a retraction. We may only accept retractions that the rights owner submits to us directly. We do not accept forwarded or attached retractions. These are the rights owner's contact details:
-- Rights owner name: Core Fitness
-- Rights owner email: mg@corehomefitness.com"

16.     Upon receiving such emails, Plaintiff engaged U.S. patent counsel to conduct analysis on whether Plaintiff's dumbbells had infringed Defendant's '983 Patent. Plaintiff's U.S. patent counsel, with over 20 years of experience in the patent field, concluded Plaintiff's delisted dumbbells do not infringe on the '983 Patent and issued a non-infringement opinion to the effect. The non-infringement opinion was submitted to Amazon.com for appeal of the complaints filed by Defendant, but was not accepted as sufficient material by Amazon.com. Plaintiff's patent counsel also emailed the non-infringement opinion to Defendant directly at the email address provided by Amazon.com and included in Defendant's reports alleging infringement, without receiving any kind of response or even acknowledgement of receipt. As a result, Plaintiff's dumbbells were off the market, causing significant financial damages and reputational harm to Plaintiff.

17.     Plaintiff's patent counsel's emails to Defendant providing the non-infringement opinions are together attached as Exhibit 1.

18.     By filing fraudulent reports of patent infringement and ignoring Plaintiff's counsel's non-infringement opinion (thereby keeping Plaintiff's dumbbells delisted), Defendant stood to gain significantly by eliminating legitimate competing products and enhancing the sales

of its own products with fewer, much more competitive sellers offering products that are cheaper and even better in design.

19.     Defendant's '983 Patent is attached hereto as Exhibit 2. This Patent issued on November 10, 2009, from U.S. patent application number 11/983,213 filed on November 6, 2007, as a continuation application of U.S. patent application number 11/410,774 filed on April 25, 2006, which had issued into U.S. Patent No. 7,291,098 on November 6, 2007.

20.     The '983 Patent has 11 claims, among which only claims 1, 9 and 11 are independent and the other claims are dependent.  Claims 1, 9, and 11 are provided below:

> 1.     An exercise apparatus, comprising:
> a liftable member having at least one weight supporting section;
> weights sized and configured to be supported by the at least one weight supporting section;
> a weight selector rotatably mounted on the liftable member for rotation about an axis extending lengthwise between adjacent said weights, wherein the weight selector is configured for rotation through a cavity defined between adjacent said weights.
>
> 9.     An exercise apparatus, comprising:
> a weight lifting member having at least one weight supporting section;
> weights sized and configured to be supported by the at least one weight supporting section, wherein notches in the weights cooperate to define a cavity having upwardly open sectors and upwardly closed sectors; and
> a weight selector rotatably mounted on the weight lifting member for rotation inside the cavity, wherein the weight selector defines a rotational axis, and includes a plate having a generally semi-circular shape when viewed axially.
>
> 11.     An exercise apparatus, comprising:
> a weight lifting member having at least one weight supporting section;
> weights sized and configured to be supported by the at least one weight supporting section, wherein notches in the weights cooperate to define a cavity having upwardly open sectors and upwardly closed sectors; and
> a weight selector, rotatably mounted on the weight lifting member for rotation inside the cavity, wherein the weight selector is rotatable between a first orientation underlying only one of the weights, and a second orientation underlying only another of the weights.

21.     Neither Defendant nor the e-commerce platform (i.e., Amazon.com, eBay.com, and/or Walmart.com) provided the sellers of Plaintiff's products or Plaintiff's patent counsel explanation or reasons as to how Plaintiff's Products infringe on the '983 Patent.

22.     Plaintiff believes its dumbbells are not covered by the claims and therefore do not infringe on the '983 Patent.

**COUNT ONE**

**(Declaratory Judgment of Non-Infringement of the '983 Patent)**

23.     Paragraphs 1 through 22 are incorporated as set forth above.

24.     Claim 1 of the '983 Patent reads:

> 1.     An exercise apparatus, comprising:
> a liftable member having at least one weight supporting section;
> weights sized and configured to be supported by the at least one weight supporting section;
> a weight selector rotatably mounted on the liftable member for rotation about an axis extending lengthwise between adjacent said weights, wherein the weight selector is configured for rotation through a cavity defined between adjacent said weights.

25.     For claim construction analyses, intrinsic evidence is of paramount importance. When "an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term[,] . . . it is improper to rely on extrinsic evidence." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583 (Fed. Cir. 1996). The specification is considered as highly relevant to the claim construction analysis, and the single best guide to the meaning of a disputed term. Generally, the patent claims should be construed to encompass the preferred embodiments described in the specification, and it is generally error to adopt a construction that excludes them. *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 ("[A] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct."), quoted in *MBO Labs., Inc. v. Becton, Dickinson & Co*., 474 F.3d 1323, 1333 (Fed. Cir. 2007). Even

13

though a claim is not ordinarily limited to a particular disclosed embodiment, the number and range of embodiments ultimately affects the scope that can be supported. Also, the specification's emphasis on the importance of a particular feature in solving the problems of the prior art is an important factor in defining the claims.

26.     For a more clearly explanation of independent claim 1, the technical features are reviewed with reference to the corresponding specification and drawings of the '983 Patent. The exercise apparatus (exercise dumbbell system 100 in the description) comprises a liftable member (weight lifting member or handle member 110 in the description) having at least one weight supporting section (117 in the description); weights (weight plate 180 and 190 in the description) sized and configured to be supported by the at least one weight supporting section; a weight selector (selector plate 166 in the description) rotatably mounted on the liftable member (110) for rotation about an axis (see the line with an arrow in the denoted FIG. 1 below) extending lengthwise between adjacent said weights (said axis within a space in between weight plates 180, 190), wherein the weight selector is configured for rotation (see the circle with arrows in the denoted FIG. 2 below) through a cavity (upwardly closed notch 184 and upwardly closed notch 194 in the description) defined between adjacent said weights.

27.     The relevant supporting drawings in the '983 Patent are also denoted as below.



FIG. 1 of the '983 Patent (denoted)



FIG. 2 of the '983 Patent (denoted)



FIG. 6 of the '983 Patent (denoted)



FIG. 8 of the '983 Patent (denoted)



FIG. 9 of the '983 Patent (denoted)

28.     Notably, claim 1 requires, among other things, a weight selector rotatably

mounted on (and thus as a part different from) the liftable member for rotation about an axis

extending lengthwise (within a space) between adjacent said weights, wherein the weight

selector is configured for rotation through a cavity defined between adjacent said weight. As

shown in the drawings of the '983 Patent, the axis for the weight selector to rotate extends

lengthwise within a space between the two adjacent weights. In other words, as shown in the

drawings of the '983 Patent, the rotating axis of the weight selector is parallel to the lengthwise

18

direction of each of the two adjacent weights, and thus extends within a space between the two adjacent weights.

29.     This is consistent with the only and preferred embodiment disclosed in the '983 Patent, and is a key feature to patentably distinguish the claims of the '983 Patent over the prior art adjustable weight exercise tools, as discussed in the background section of the '983 Patent. Moreover, as described by the specification of the '983 Patent, the problem to be solved by the '983 Patent is to improve the prior art adjustable weight lifting equipment by enabling the selection of different combinations of the weight plates. The solution disclosed and claimed in the '983 Patent is to use a particular weight selector (e.g., a semi-circular profile, see, e.g., claim 2) that is rotatable within a space between adjacent weights and through a cavity defined between adjacent weights, thereby allowing its rotation into and out of engagement with different combinations of the weight plates. For instance, as shown in the drawings of the '983 Patent, the weight selector (the selector plate 166) is rotatable between a first orientation underlying only one of the weights (180), and a second orientation underlying only another of the weights (190).

30.     Regarding Product 1 (which is covered by U.S. Patent No. 11,167,167 B1), as shown by the illustrative figures provided above (e.g., in Paragraph 14 of this document), Product 1 includes a dumbbell component (10), a dumbbell seat (5) and a plurality of dumbbell pieces (4) placed at two sides of the dumbbell seat (5). The dumbbell component (10) comprises a handle component (1), tailstock components (2) disposed at two sides of the handle component (1) and two sliders (3) movably connected to two ends of the handle component (1). The middle part of each dumbbell piece (4) includes a fixing hole (401) for insertion of the slider (3), wherein upper end of the fixing hole (401) is provided with opening groove (402) communicating. The width of the opening grooves (402) is smaller than a diameter of the slider (3), but greater than a diameter

of the fixing shaft (206). Accordingly, rotating the handle component (1) can drive the sliders (3) to move slidably, thereby allowing each slider (3) to extend till different lengths and thus enabling the slider (when extended) to engage different numbers of dumbbell pieces (4) with its fixing hole (401).

31.     Product 1 is substantially different form claim 1 of the '983 Patent for at least the reasons described below.

**32.**     First, Product 1 does not include the limitation "a weight selector rotatably mounted on the liftable member for rotation about an axis extending lengthwise between adjacent said weights." As required by independent claim 1 of the '983 Patent, the "weight selector" is configured to rotate between adjacent weights (the plural expression can be interpreted as there are at least two weights, and in the denoted FIG. 1 of the '983 Patent, as provided above, there are two weights 180 and 190). On the other hand, as shown by the figures of Product 1, Product 1 includes a rotatable handle component, which is rotatable clockwise or counterclockwise but is not "a weight selector rotatably mounted on the liftable member" (i.e., handle), as required by claim 1 of the '983 Patent. The rotation of Product 1's rotatable handle component can driver both sliders for telescopic movement/extension—and once a slider is extended through the central hole of a dumbbell plate, the extended slider can engage with such a dumbbell plate. Such a slider is also different from "a weight selector rotatably mounted on the liftable member" as required by claim 1 of the '983 Patent.

33.     Moreover, as shown in denoted FIG. 1 of the '983 Patent, the axis for the weight selector to rotate extends lengthwise within a space between two adjacent weights. However, for Product 1, as stated above, even if the rotatable handle component were to be considered as a "weight selector" (which we disagree as discussed above), it rotates about an axis which extends

lengthwise of or through one dumbbell plate. In other words, the axis for Product 1's rotatable handle to rotate is not between adjacent dumbbell plates, as required by claim 1 of the '983 Patent.

34.     Further, it can be seen from the denoted FIG. 1 and FIG. 2 of the '983 Patent, that the weight selector is perpendicularly arranged to the weights, and the rotating axis of the weight selector is parallel to the lengthwise direction of one weight. However, according to the pictures of Product 1, each slider is moving through the central hole of the dumbbell plate, and the rotating axis of the rotatable handle is perpendicular to lengthwise direction of the lock disc. In this perspective view, Product 1 also differs from the claimed invention of the '983 Patent.

35.     Second, Product 1 is different from claim 1 in terms of the technical feature "the weight selector is configured for rotation through a cavity defined between adjacent said weights" as required by claim 1. Please refer to the denoted FIG. 8 and FIG. 9 of the '983 Patent, which shows that the cavity 183 and 184 opened in the weight 180 and the cavity 193 and 194 opened in the weight 190 form the cavity defined in the independent claim 1. However, as shown in the figures of Product 1, the middle part of each dumbbell piece includes a fixing hole for insertion of the slider, as the width of the opening grooves is smaller than a diameter of the slider. While the slider of Product 1 moves through the central hole of each dumbbell plate, there appears no "cavity" defined between adjacent weights for a weight selector to rotate (and select different combination of weights), as required by claim 1 of the '983 Patent.

36.     In summary, Product 1 does not include all the limitations of—and thus does not fall within the scope of—independent claim 1 of the '983 Patent. Thus, Product 1 would not infringe claim 1 of the '983 Patent. Claims 2-8 of the '983 Patent depend from claim 1, and each have an even narrower scope than claim 1. For at least the same reasons discussed above

21

regarding claim 1, Product 1 also does not fall within the scope of any of claims 2-8 of the '983 Patent.

37.     Regarding Product 2, as shown by the illustrative figures of Product 2 provided above (e.g., in Paragraph 14), Product 2 includes a base (1), a grip or handle (2), and a plurality of sets of dumbbell plate assemblies (3) connected on each side of the grip. Each dumbbell plate assembly of the plurality of sets of dumbbell plate assemblies includes a rotating member (31), an adapter (32), a limiting member (33) and a weight plate (4). In particular, the rotating member (31) is configured to rotate with the grip (2). The limiting member (33) is located between the rotating member (31) and the adapter (32). The limiting member (33) fits with and is connected to the adapter (32) in a non-rotatable manner. The limiting member and the adapter are elastically connected. The limiting member may contain abutting ribs (331) on its side facing the rotating member, and contain protrusion(s) (332) on its face facing the adapter. The adapter (32) includes insertion hole(s) (321). When the rotating member (31) rotates with the grip (2), the rotating member (e.g., driving protrusion) drives the limiting member (33) to translate, and the protrusion (332) is inserted into (or separated from) the insertion hole (321). When the protrusion (332) is inserted into the insertion hole, the protrusion can further insert into the corresponding clamping slot (41) of the weight plate (4), thereby connecting or engaging the weight plate (4).

38.     Product 2 is substantially different form claim 1 of the '983 Patent for at least the reasons described below.

39.     First, Product 2 does not include the limitation "a weight selector rotatably mounted on the liftable member for rotation about an axis extending lengthwise between adjacent said weights." As required by independent claim 1 of the '983 Patent, the "weight selector" is configured to rotate between adjacent weights (the plural expression can be

interpreted as there are at least two weights, and in the denoted FIG. 1 of the '983 Patent, there are two weights 180 and 190). On the other hand, as shown by the figures of Product 2, Product 2 includes a rotatable grip/handle, which is rotatable clockwise or counterclockwise but is not "a weight selector rotatably mounted on the liftable member" (i.e., handle), as required by claim 1 of the '983 Patent. Product 2 includes a plurality of dumbbell plate assemblies connected on each side of the grip, each dumbbell plate assembly being configured to engage only one corresponding weight plate (rather than being shared by two adjacent weights). The rotation of Product 2's grip may push the protrusions (contained by the dumbbell plate assembly) to insert into the clamping holes of the weight plate in a non-rotatable manner, thereby engaging such a weight plate. This selecting structure is also different from "a weight selector rotatably mounted on the liftable member" as required by claim 1 of the '983 Patent.

40. Moreover, as shown in denoted FIG. 1 of the '983 Patent, the axis for the weight selector to rotate extends lengthwise within a space between two adjacent weights. However, for Product 2, as stated above, even if the rotatable grip (or handle) were to be considered as a "weight selector" (which we disagree as discussed above), it rotates about an axis which extends lengthwise of or through one dumbbell plate. In other words, the axis for Product 2's rotatable grip to rotate is not between adjacent dumbbell plates, as required by claim 1 of the '983 Patent.

41. Further, it can be seen from the denoted FIG. 1 and FIG. 2 of the '983 Patent, that the weight selector is perpendicularly arranged to the weights, and the rotating axis of the weight selector is parallel to the lengthwise direction of one weight. However, according to the pictures of Product 2, the protrusions are to be inserted into the clamping holes of the weight plate in a non-rotatable manner, and the rotating axis of the rotatable grip is perpendicular to lengthwise direction

of the weight plate. In this perspective view, Product 2 also differs from the claimed invention of the '983 Patent.

42.     Second, Product 2 is different from claim 1 in terms of the technical feature "the weight selector is configured for rotation through a cavity defined between adjacent said weights" as required by claim 1. Please refer to the denoted FIG. 8 and FIG. 9 of the '983 Patent, which shows that the cavity 183 and 184 opened in the weight 180 and the cavity 193 and 194 opened in the weight 190 form the cavity defined in the independent claim 1. However, as shown in the figures of Product 2, each weight plate has certain (e.g., three) clamping holes for insertion of the protrusions in a non-rotatable manner, and there appears no "cavity" defined between adjacent weights for a weight selector to rotate (and select different combination of weights), as required by claim 1 of the '983 Patent.

43.     In summary, Product 2 does not include all the limitations of—and thus does not fall within the scope of—independent claim 1 of the '983 Patent. Claims 2-8 of the '983 Patent depend from claim 1, and each have an even narrower scope than claim 1. For at least the same reasons discussed above regarding claim 1, Product 2 also does not fall within the scope of any of claims 2-8 of the '983 Patent.

44.     Claim 9 of the '983 Patent provides:

> An exercise apparatus, comprising:
> a weight lifting member having at least one weight supporting section;
> weights sized and configured to be supported by the at least one weight supporting section, wherein notches in the weights cooperate to define a cavity having upwardly open sectors and upwardly closed sectors; and
> a weight selector rotatably mounted on the weight lifting member for rotation inside the cavity, wherein the weight selector defines a rotational axis, and includes a plate having a generally semi-circular shape when viewed axially.

45.     Neither Product 1 nor Product 2 includes "notches in the weights cooperate to define a cavity having upwardly open sectors and upwardly closed sectors" as required by claim 9 of the '983 Patent. The weight piece of Product 1 (which includes central hole with narrower opening groove) and the weight plate of Product 2 (which includes clamping slots) are significantly different from "a cavity having upwardly open sectors and upwardly closed sectors"—as required by claim 9 of the '983 Patent.

46.     Moreover, neither Product 1 nor Product 2 includes "a weight selector rotatably mounted on the weight lifting member for rotation inside the cavity, wherein the weight selector defines a rotational axis, and includes a plate having a generally semi-circular shape when viewed axially" as required by claim 9 of the '983 Patent.

47.     Accordingly, each of Plaintiff's Products is structurally different from the exercise apparatus defined in independent claim 9. Moreover, the working principle of each of the Products is also different from that of the exercise apparatus defined in independent claim 9, as their structures and invention concepts are different.

48.     In summary, each of Plaintiff's products does not fall within the scope of the independent claim 9 of the '983 Patent. Each of Plaintiff's products likewise does not fall within the scope of claim 10, which depends from and is narrower than claim 9.

49.     Independent claim 11 is the final claim in the '983 Patent.  It reads:

> An exercise apparatus, comprising:
> a weight lifting member having at least one weight supporting section;
> weights sized and configured to be supported by the at least one weight supporting section, wherein notches in the weights cooperate to define a cavity having upwardly open sectors and upwardly closed sectors; and
> a weight selector, rotatably mounted on the weight lifting member for rotation inside the cavity, wherein the weight selector is rotatable

between a first orientation underlying only one of the weights, and a
second orientation underlying only another of the weights.

50.     Plaintiff's Products are not covered by and therefore do not infringe claim 11 of
the '983 Patent for at least two reasons:

51.     First, neither Product 1 nor Product 2 includes "notches in the weights cooperate
to define a cavity having upwardly open sectors and upwardly closed sectors" as required by
claim 11 of the '983 Patent.

52.     Second, neither Product 1 nor Product 2 includes the limitation "a weight selector,
rotatably mounted on the weight lifting member for rotation inside the cavity, wherein the weight
selector is rotatable between a first orientation underlying only one of the weights, and a second
orientation underlying only another of the weights" as required by claim 11 of the '983 Patent.
Particularly, neither Product 1 nor Product 2 includes an element that is rotatable between a first
orientation underlying only one of the weights, and a second orientation underlying only another
of the weights, as required by claim 11 of the '983 Patent.

53.     Accordingly, each of Plaintiff's Products is structurally different from the exercise
apparatus defined in independent claim 11. Moreover, the working principle of each of the
Products is also different from that of the exercise apparatus defined in independent claim 11 as
their structures and invention concepts are different.

54.     In summary, each of the Plaintiff's Products does not fall within the scope of the
independent claim 11 of the '983 Patent.

55.     Plaintiff's Products do not infringe upon any of claims 1 to 11 of the '983 Patent.
Plaintiff is entitled to a declaratory judgment that Plaintiff's Products as do not infringe under 35
U.S.C. § 271 (or any sub-section thereof) any claim of the '983 Patent. Such a determination and

declaration are necessary and appropriate at this time to resolve the dispute regarding alleged infringement of the '983 Patent.

## COUNT TWO

### (Declaratory Judgment of Invalidity of U.S. Patent No. 7,614,983)

56.     Plaintiff repeats and realleges each and every allegations contained in the Paragraphs above as if fully set forth herein.

57.     As explained above, no claim of the '983 Patent has been or is infringed, either directly or indirectly, by Plaintiff, or retailers or purchasers of Plaintiff's Products through their sale, purchase, or use of Plaintiff's Products. Should the Court disagree, the Court should enter judgment declaring that the '983 Patent is invalid.

58.     The claims of the '983 Patent are invalid for failure to comply with the requirements of patentability as specified in 35 U.S.C. §§ 1 et seq., including, without limitation, 35 U.S.C. §§ 102, 103, and/or 112, and/or based on other judicially-created bases for invalidation. In particular, the '983 Patent is invalid under 35 U.S.C. §§ 102 and/or 103 because its claims are anticipated and/or rendered obvious by prior art. By way of example, exemplary claim 1 is invalid under 35 U.S.C. §§ 102 and/or 103 because it is anticipated and/or obvious in view of prior art.

59.     As an example, claim 1 is invalid as non-novel and/or obvious in view of International Publication No. WO 2003/089070 A1 (attached as Exhibit 3), International Publication No. WO 2003/103777 A2 (attached as Exhibit 4), U.S Pat. No. 7,077,791 B2(attached as Exhibit 5), and U.S Pat. No.7,261,678 B2 (attached as Exhibit 6). The prior art references disclose, or at a minimum render obvious, all the limitations in claim 1, including "a liftable member having at least one weight supporting section;" "weights sized and configured to

be supported by the at least one weight supporting section;" and "a weight selector rotatably mounted on the liftable member for rotation about an axis extending lengthwise between adjacent said weights, wherein the weight selector is configured for rotation through a cavity defined between adjacent said weights."

60.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality between Plaintiff and Defendant to warrant the issuance of a declaratory judgment that the claims of the '983 Patent are invalid.

## COUNT THREE

## (Awarding Damages to Plaintiff Caused by

## Defendant's Fraudulent Reports of Patent Infringement)

61.     Prior to Defendant's fraudulent report of alleged infringement of the '983 Patent, Plaintiff's Products were popular with consumers and enjoyed successful sales. As a result of Defendant's fraudulent reports which caused delisting of Plaintiff's Products, Plaintiff suffered significant financial losses and reputational harm which would not have occurred but for Defendant's fraudulent reports of alleged patent infringement.

62.     Defendant intentionally ignored Plaintiff's good faith attempts to resolve the disputes and re-activate listings of Plaintiff's Products, prolonging Plaintiff's significant financial losses.

63.     Plaintiff's financial losses and reputational harm should be compensated by Defendant given the fraudulent and malicious nature of Defendant's reports filed with Amazon.com, eBay.com, and/or Walmart.com, which attempted to eliminate legitimate competitions and enhance sales of Defendant's own products that had very poor performance on Amazon.com prior to its fraudulent reports.

## JURY TRIAL DEMAND

Plaintiff hereby requests a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief pursuant to 28 U.S.C. §§ 2201 and 2202:

a.      That a declaration be issued under 28 U.S.C. § 2201 declaring that Plaintiff's Products as listed in the table in Paragraph 9 do not infringe and have not infringed under 35 U.S.C. § 271 (or any sub-section thereof) the '983 Patent.

b.      That a declaration be issued under 28 U.S.C. § 2201 declaring that customers do not infringe and have not infringed the '983 Patent by purchasing or using of Plaintiff's Products.

c.      That an injunction be issued against Defendant, barring it from alleging infringement against Plaintiff and any of Plaintiff's retailers and customers based on their sale, purchase or use of Plaintiff's Products, taking any action to suggest that Plaintiff or its retailers or customers require a license from Defendant for the '983 Patent, filing reports of alleged infringement of the '983 Patent on e-commerce platforms against Plaintiff's Products, or pursuing or continuing to pursue infringement actions against Plaintiff's customers on the basis of those retailers or customers' sale or use of Plaintiff's Products.

d.      That Defendant pay Plaintiff for its financial losses and reputational harm arising out of delisting of Plaintiff's Products caused by Defendant's reports of alleged infringement of the '983 Patent, and punitive damages due to Defendant's improper acts and the willful and exceptional nature of the case.

e.      That this case be adjudged an exceptional case under 35 U.S.C. § 285, awarding Plaintiff its attorneys' fees and costs.

f.    That the Court award all other and further relief (general or special, consequential or incidental) as it deems just and proper.

DATED January 25, 2025                    Respectfully submitted,

                                          /s/ Weisun Rao
                                          Weisun Rao (IL Bar No. 6287158)
                                          Venture Partner, LLC
                                          401 N. Michigan Ave.
                                          Suite 1200
                                          Chicago, IL 60611
                                          Tel: 312-840-8228
                                          rao@venturepartner.law
                                          Attorney For Plaintiff
                                          ZHEJIANG QILI HEALTH
                                          TECHNOLOGY CO., LTD.